**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**Capital One, National Association**

***Plaintiff/Counterclaim-Defendant*,**

**v.**

**Federal Deposit Insurance Corporation**

***Defendant/Counterclaim-Plaintiff*.**

**No. 1:25-cv-1515-RDA-LRV**

**MEMORANDUM OF LAW IN SUPPORT OF CAPITAL ONE'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 3

I. CONA .......... 3

II. CALL REPORTS .......... 3

III. THE SPECIAL ASSESSMENT .......... 5

IV. FUNDING AND THE INTERCOMPANY POSITION .......... 6

V. CONA'S DECEMBER 2022 CALL REPORT .......... 6

VI. CONA'S CLAIM AND THE FDIC'S COUNTERCLAIM .......... 7

ARGUMENT .......... 8

I. THE SPECIAL ASSESSMENT MUST BE BASED ON A BANK'S CALL REPORT. .......... 9

II. CONA'S REVISED CALL REPORT IS THE OPERATIVE CALL REPORT FOR PURPOSES OF THE SPECIAL ASSESSMENT RULE. .......... 11

III. THE FDIC CANNOT DISREGARD CONA'S REVISED CALL REPORT .......... 11

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Cases**

*Bremus v. AMR Corp.*,
527 B.R. 221 (E.D. Va. 2014), *aff'd*, 604 F. App'x 324 (4th Cir. 2015)..................................3

*Gilbert v. Residential Funding LLC*,
678 F.3d 271 (4th Cir. 2012) ..........................................................................................10

*Healthkeepers, Inc. v. Richmond Ambulance Auth.*,
642 F.3d 466 (4th Cir. 2011) ............................................................................................9

*Mullinex v. John Crane Inc.*,
2022 WL 16814885 (E.D. Va. Nov. 8, 2022)...................................................................8

*Romero v. Barr*,
937 F.3d 282 (4th Cir. 2019) ..........................................................................................10

**Statutes**

12 U.S.C. § 161(a) ...........................................................................................3, 13

12 U.S.C. § 1813(q) ..........................................................................................4, 13

12 U.S.C. § 1817...............................................................................1, 2, 4, 8, 13

**Regulations**

12 C.F.R. § 4.2...................................................................................................13

12 C.F.R § 304.3 ..............................................................................................4, 13

12 C.F.R. § 327.4 ..............................................................................................11

12 C.F.R. § 327.5 ..............................................................................................11

12 C.F.R. § 327.13 ..........................................................................1, 5, 9, 10, 11, 12

**Administrative Materials**

Special Assessment Pursuant to Systemic Risk Determination,
88 Fed. Reg. 83329, 2023 WL 8235937 (Nov. 29, 2023) ..........................................2, 11, 12

**Treatises**

Wright & Miller, Fed. Prac. & Proc., § 1367 (3d ed.) .........................................................9

Capital One, National Association ("CONA") respectfully submits this memorandum of law in support of its Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), as to CONA's declaratory judgment claim and the counterclaim asserted by the Federal Deposit Insurance Corporation ("FDIC") under 12 U.S.C. § 1817.

## PRELIMINARY STATEMENT

The FDIC's attempt to collect an outsized and improperly calculated special assessment from CONA – approximately $149 million of which CONA does not owe – directly contradicts the plain language of the governing regulation. CONA is entitled to judgment on the pleadings in this action on that basis, as the relevant facts are not in dispute.

The special assessment at issue arises from the FDIC's response to the failure of Silicon Valley Bank and Signature Bank in March 2023. In November 2023, the FDIC promulgated a regulation governing the collection of a special assessment from certain larger FDIC-insured banks, including CONA (the "Special Assessment Rule"). According to the Special Assessment Rule, the amount of each bank's assessment must be calculated based on the bank's estimated "uninsured deposits" as reported on the bank's Consolidated Reports of Condition and Income ("Call Report") for the quarter ended December 31, 2022. Crucially, this rule – which the FDIC drafted – requires that the FDIC use the bank's December 2022 Call Report as it stood as of November 2, 2023, unless the bank later amended its Call Report as a result of the FDIC's "Assessment Reporting Review." *See* 12 C.F.R. § 327.13(f).

CONA's dispute with the FDIC centers on whether a certain intercompany position (the "Intercompany Position") between CONA and a wholly owned subsidiary, Capital One Funding, LLC, should be included in the basis of CONA's special assessment. CONA erroneously included the Intercompany Position as an "uninsured deposit" when it initially filed its December 2022 Call Report (the "Original Call Report"), but on June 29, 2023 – months before the

November 2, 2023 deadline from the Special Assessment Rule – CONA filed an amended Call Report to correct the error (the "Revised Call Report"). Notwithstanding that amendment, and contrary to the plain language of the Special Assessment Rule, the FDIC has insisted on assessing CONA based on the erroneous Original Call Report, rather than the correct version operative as of November 2, 2023.

While the parties disagree on whether the Intercompany Position constitutes a "deposit," and thus whether it should be included in CONA's estimate of "uninsured deposits," the Court need not resolve that issue for purposes of this motion. As the pleadings make clear, there is no dispute that CONA filed the Revised Call Report before November 2, 2023 and did not file any subsequent amendments. The Special Assessment Rule therefore mandates that CONA's special assessment be based on its Revised Call Report.

As a matter of law, the FDIC cannot ignore the Revised Call Report in calculating CONA's special assessment, regardless of whether it disagrees with CONA's treatment of the Intercompany Position. The plain language of the Special Assessment Rule is unambiguous that the special assessment must be based on the operative December 2022 Call Report – including any amendments filed by the bank on or before November 2, 2023. Indeed, the FDIC acknowledges in its description of the regulation that the special assessment will "reflect any amendments" to a bank's Call Report "as of November 2, 2023, for the reporting period that ended December 31, 2022." Special Assessment Pursuant to Systemic Risk Determination, 88 Fed. Reg. 83329, at 83332 n.15, 2023 WL 8235937 (Nov. 29, 2023). Those Call Reports, as the FDIC also acknowledges, are accompanied by certifications by directors and officers of the bank that the information provided "is true and correct to the best of [their] knowledge and belief," 12 U.S.C. § 1817(a)(3). The FDIC's disagreement with CONA's treatment of the

Intercompany Position does not allow it to substitute its own judgment for the information provided by CONA in its Revised Call Report. And the FDIC did not – and does not have the authority to – require CONA to amend its Revised Call Report.

The Court should enter judgment on the pleadings, declaring that CONA's special assessment must be based on the "estimated uninsured deposits" reported in its operative Call Report as of November 2, 2023 – the Revised Call Report – and dismissing the FDIC's counterclaim.

## STATEMENT OF FACTS[1]

### I. CONA

CONA is a national banking association headquartered in McLean, Virginia, whose principal supervisor is the Office of the Comptroller of the Currency ("OCC"). (CONA Complaint & FDIC Answer ("C&A") ¶ 16.) CONA offers banking products and financial services to consumers, small businesses and commercial clients. (C&A ¶ 16.) One of its principal activities is credit card lending to consumers and small businesses. (C&A ¶ 20.) As part of its lending business, CONA offers credit cards and may securitize the receivables that are generated. (C&A ¶ 20.)

### II. CALL REPORTS

As a national banking association, CONA is required to make "reports of condition" to the OCC in accordance with the Federal Deposit Insurance Act ("FDIA"). *See* 12 U.S.C.

---

[1] For purposes of this Rule 12(c) motion, the Court "may consider the complaint, answers, matters of public record, exhibits to the complaint and answer, and 'exhibits to the Rule 12(c) motions that were integral to the complaint and authentic.'" *Bremus v. AMR Corp.*, 527 B.R. 221, 225 (E.D. Va. 2014) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014)), *aff'd*, 604 F. App'x 324 (4th Cir. 2015). A copy of one such documents is attached as "Ex. A."

§ 161(a). The FDIA specifies that those reports are to be made to the "appropriate Federal banking agency" – the OCC for CONA – on a quarterly basis. 12 U.S.C. §§ 1817(a)(3), 1813(q)(1)(A).

In particular, CONA is required to file "Consolidated Reports of Condition and Income," also known as "Call Reports," which provide information about its financial condition, including its assets and liabilities. 12 C.F.R. § 304.3(a). As relevant to this action, Schedule RC-O of the Call Report requires banks to report their total deposits and the total amount of their estimated uninsured deposits, along with other information. (FDIC Countercl. & CONA Answer ¶ 16.) Each Call Report is accompanied by a certification by an officer and two directors of the bank that the report is "true and correct" to the best of their "knowledge and belief." 12 U.S.C. § 1817(a)(3).

Call Reports must be filed "in accordance with the instructions" for the reports. 12 C.F.R. § 304.3(a). Those instructions (the "Call Report Instructions") require that banks submit their Call Reports to the "Central Data Repository" maintained by the Federal Financial Institutions Examination Council ("FFIEC"), an interagency body that coordinates reporting for its member agencies. (Ex. A at 9.)[2]

The FDIC is permitted "access" to the Call Reports that CONA files with the OCC. 12 U.S.C. § 1817(a)(2)(A). But, only the OCC, as CONA's primary supervisory authority, "may require the filing of an amended Call Report if reports as previously submitted contain significant errors, as determined by the [OCC], in how the reporting bank classified or categorized items in the reports." (Ex. A at 10a; *see also id.* at 8 ("[W]hen a bank's primary

---

[2] Attached as Ex. A is copy of the General Instructions for Call Reports. The full instructions are available at https://www.ffiec.gov/sites/default/files/data/reporting-forms/FFIEC031_FFIEC041_202503_i.pdf.

federal bank supervisory agency's interpretation of the instructions differs from the bank's interpretation, the supervisory agency may require the bank to prepare its Call Report in accordance with the agency's interpretation and to amend previously submitted reports.").)

## III. THE SPECIAL ASSESSMENT

In March 2023, Silicon Valley Bank and Signature Bank failed, and the FDIC was appointed receiver. (C&A ¶¶ 44, 45.) On March 12, 2023, the Secretary of the Treasury invoked the FDIA's "systemic risk exception" to allow the FDIC to use funds from the Deposit Insurance Fund ("DIF") to protect the *uninsured* depositors, in addition to the insured depositors, of the two failed banks. (C&A ¶ 46.)

In November 2023, after a notice and comment period, the FDIC adopted the Special Assessment Rule to recover the loss to the DIF resulting from the FDIC's protection of uninsured depositors. (C&A ¶¶ 4, 47.) The Special Assessment Rule imposes a special assessment "on each insured depository institution to recover losses to the Deposit Insurance Fund." 12 C.F.R. § 327.13(a). A bank's special assessment is calculated by multiplying the "special assessment rate" by the bank's "special assessment base," as those terms are defined in the Special Assessment Rule. *Id.* § 327.13(c). The "special assessment base" is defined as the bank's "uninsured deposits" minus $5 billion. *Id.* § 327.13(i)(3)(i).

Importantly, "uninsured deposits" is expressly defined, for purposes of the special assessment, as the "estimated uninsured deposits as reported in" the bank's December 2022 Call Report "reported as of the later of: (1) November 2, 2023 . . . or (2) [t]he date of the institution's most recent amendment to its [December 2022 Call Report], if such amendment arises from, or is confirmed through, the FDIC's Assessment Reporting Review." *Id.* § 327.13(f).

## IV. FUNDING AND THE INTERCOMPANY POSITION

Capital One Funding, LLC ("Funding") was organized in 2001 and is a special purpose vehicle created for the sole purpose of supporting CONA's credit card securitization activities. (C&A ¶ 21.) Prior to October 1, 2022, Funding was a wholly owned subsidiary of Capital One Bank (USA), National Association ("COBNA"). (FDIC Countercl. & CONA Answer ¶ 25.) On October 1, 2022, COBNA merged with CONA, at which point Funding became a wholly owned subsidiary of CONA. (*Id.*)

The parties disagree on the nature of the Intercompany Position between CONA and Funding. CONA's position is that it is merely a book-entry position that tracks certain proceeds of CONA's credit card securitization activities, and that it is not a "deposit" for purposes of the FDIA. (CONA Compl. ¶¶ 8, 27-33.) The FDIC disagrees, apparently based on the use of the word "deposit" in an agreement between COBNA and Funding. (FDIC Countercl. ¶¶ 27-29.) The Court need not resolve that disagreement for purposes of this motion.[3]

## V. CONA'S DECEMBER 2022 CALL REPORT

In February 2023, CONA filed the Original Call Report for the quarter that ended December 31, 2022, its first Call Report following the October 2022 merger of CONA and COBNA. (C&A ¶ 34; FDIC Countercl. & CONA Answer ¶ 25.) The Original Call Report included the Intercompany Position as an "uninsured deposit" on Schedule RC-O. (C&A ¶ 35.)

On June 29, 2023, after further review, CONA filed the Revised Call Report to correct the erroneous inclusion of the Intercompany Position as an uninsured deposit on the Original

---

[3] An analogous intercompany position existed between CONA and another wholly owned subsidiary, Capital One Auto Receivables, LLC. (CONA Compl. ¶¶ 6, 26.) Similarly, the Court need not resolve whether that amount constitutes a "deposit" for purposes of this motion, which is limited to CONA's argument regarding the FDIC's obligation to use the information provided in CONA's Revised Call Report.

Call Report's Schedule RC-O. (C&A ¶ 41.) On July 7, 2023, CONA informed the FDIC, OCC, and the Federal Reserve that it had amended its Call Report, and it provided documentation supporting that amendment. (C&A ¶ 42.)

In June 2024, the FDIC provided CONA with its Assessment Reporting Review findings and requested that CONA amend its Revised Call Report to reflect the Intercompany Position as an uninsured deposit. (C&A ¶ 50.) CONA did not amend the Revised Call Report. (C&A ¶ 51.) The FDIC issued an invoice to CONA in June 2025 and an amended invoice in July 2025. (C&A ¶¶ 55-56.) The FDIC's invoices contained a calculation of CONA's total special assessment amount, which included the Intercompany Position of $56 billion as an uninsured deposit. (C&A ¶¶ 57-58.)

## VI. CONA'S CLAIM AND THE FDIC'S COUNTERCLAIM

CONA seeks a declaration that the FDIC's calculation of the special assessment was invalid for at least three separate and independent reasons. *First*, the Intercompany Position is not a "deposit" under the FDIA and is not an amount that would be subject to insurance by the FDIC. *Second*, the FDIC's inclusion of the Intercompany Position in the calculation of CONA's special assessment is inconsistent with the Special Assessment Rule because it was not included in CONA's Revised Call Report. *Third*, at a minimum, Funding validly distributed $54 billion of the Intercompany Position, effective as of October 1, 2022, such that the Intercompany Position was reduced to approximately $2 billion before December 31, 2022. (CONA Compl. ¶¶ 69-71.) This motion addresses only the second basis of CONA's claim – the FDIC's violation of the plain language of the Special Assessment Rule – which can be resolved on the pleadings alone, without the need for discovery. In order to grant judgment in favor of CONA, the Court need not determine whether the Intercompany Position is a "deposit" or the effective date of Funding's distribution.

The FDIC's counterclaim, asserted under 12 U.S.C. § 1817(g), is essentially a mirror image of CONA's claim. The FDIC seeks an order requiring payment of a special assessment amount based on its view that the Intercompany Position should be counted as an "uninsured deposit," even though it was not reported as such in CONA's Revised Call Report. (FDIC Countercl. ¶¶ 51-59.)

## ARGUMENT

The Court should grant judgment on the pleadings in favor of CONA as to both CONA's declaratory judgment claim and the FDIC's counterclaim. The FDIC has ignored the text of its own Special Assessment Rule and miscalculated CONA's special assessment. Under its plain and unambiguous terms, the Special Assessment Rule requires the FDIC to calculate CONA's special assessment using the "uninsured deposits" amount reported in the Revised Call Report. The FDIC's apparent disagreement with the Revised Call Report does not provide grounds for it to rewrite the terms of a federal regulation – that it drafted – and calculate CONA's special assessment in some other way. Nowhere in its answer or counterclaim does the FDIC offer any interpretation of the language of the Special Assessment Rule that would allow it to disregard CONA's Revised Call Report.

Judgment on the pleadings is appropriate because the content and timing of CONA's Call Reports are not disputed, and the plain language of the Special Assessment Rule requires that CONA's Special Assessment be based on the Revised Call Report, regardless of any dispute between the parties as to whether the Intercompany Position should be considered a "deposit." The FDIC admits that the Revised Call Report was filed before November 2, 2023, that the Revised Call Report did not include the Intercompany Position as an uninsured deposit, and that the FDIC included the Intercompany Position in calculating CONA's special assessment anyway, despite the plain text of the governing regulation. *See Mullinex v. John Crane Inc.*,

2022 WL 16814885, at *2 (E.D. Va. Nov. 8, 2022) ("When a plaintiff moves for judgment on the pleadings, the motion will be granted if, on the uncontested facts alleged in the complaint and assuming all material allegations of fact in the answer as true, the plaintiff is entitled to judgment as a matter of law."); *see also Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471 (4th Cir. 2011) (A "question of statutory interpretation" is a "quintessential question of law.") (alterations omitted); Wright & Miller, Fed. Prac. & Proc., § 1367 (3d ed.) (Judgment on the pleadings is appropriate where claim turns on the "interpretation of a statutory provision.").[4]

## I. THE SPECIAL ASSESSMENT MUST BE BASED ON A BANK'S CALL REPORT.

The Special Assessment Rule clearly and unambiguously requires that a bank's special assessment be based on the amount of "uninsured deposits" as reported in the bank's December 2022 Call Report. Specifically, as discussed above, the special assessment is the product of the "special assessment rate" and the "special assessment base," with the latter defined as the bank's "uninsured deposits," less $5 billion. 12 C.F.R. §§ 327.13(c), 327.13(i). The bank's "uninsured deposits" is then expressly defined, for purposes of the special assessment, as the "estimated uninsured deposits *as reported in*" Schedule RC-O in the Call Report "for the quarter ended December 31, 2022, *reported as of the later of*: (1) November 2, 2023 . . .; or (2) The date of the institution's most recent amendment to its Call Report . . . for the quarter ended December 31,

[4] Funding's distribution of $54 billion to CONA also does not impact the FDIC's obligation, under the Special Assessment Rule, to base CONA's special assessment on the Revised Call Report, and so the Court need not determine the effective date of that distribution for purposes of this motion.

2022, if such amendment arises from, or is confirmed through, the FDIC's Assessment Reporting Review." *Id.* § 327.13(f) (emphases added).[5]

Where, as here, the language of a statute or regulation is unambiguous, "its plain language controls." *Romero v. Barr*, 937 F.3d 282, 291 (4th Cir. 2019); *see also Gilbert v. Residential Funding LLC*, 678 F.3d 271, 276 (4th Cir. 2012) ("The Supreme Court has repeatedly emphasized the importance of the plain meaning rule, stating that if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written.").

Indeed, the FDIC expressly contemplated that basing the special assessment on the December 2022 Call Report – as it stood as of November 2, 2023 – would allow for banks to make amendments to their initially filed Call Reports.[6] The FDIC stated in its description of the

---

[5] In full, this subsection of the Special Assessment Rule states:

"(f) Uninsured deposits. For purposes of this section, the term "uninsured deposits" means an institution's estimated uninsured deposits as reported in Memoranda Item 2 on Schedule RC-O, Other Data For Deposit Insurance Assessments in the Consolidated Reports of Condition and Income (Call Report) or Report of Assets and Liabilities of U.S. Branches and Agencies of Foreign Banks (FFIEC 002) for the quarter ended December 31, 2022, reported as of the later of:

(1) November 2, 2023, adjusted for mergers prior to March 12, 2023; or

(2) The date of the institution's most recent amendment to its Call Report or FFIEC 002 for the quarter ended December 31, 2022, if such amendment arises from, or is confirmed through, the FDIC's Assessment Reporting Review. Institutions with less than $1 billion in total assets as of June 30, 2021, were not required to report such items; therefore, for purposes of calculating the special assessment or a shortfall special assessment under this section, the amount of uninsured deposits for such institutions as of December 31, 2022, is zero."

12 C.F.R. § 327.13(f).

[6] The initial deadline for CONA to file its Call Report for the quarter ended December 31, 2022, was February 4, 2023. (*See* Ex. A at 10a.)

Special Assessment Rule: "The special assessment rate, base, and expected effects in this final rule *reflect any amendments to data as of November 2, 2023*, for the reporting period that ended December 31, 2022." 88 Fed. Reg. 83329, at 83332 n.15, 2023 WL 8235937 (emphasis added).

Notably, the Special Assessment Rule's mandated reliance on banks' Call Reports stands in stark contrast to the FDIC regulations governing the regular assessments that banks pay in the normal course. As to those regular assessments, the FDIC assigns each bank an "assessment risk assignment" and calculates an "assessment base" for each bank, as set forth in 12 C.F.R. §§ 327.4, 327.5, which do not require reliance on amounts reported by banks in their Call Reports. The FDIC chose to take a different approach in drafting the Special Assessment Rule, 12 C.F.R. § 327.13, and it must follow that regulation as written.

## II. CONA'S REVISED CALL REPORT IS THE OPERATIVE CALL REPORT FOR PURPOSES OF THE SPECIAL ASSESSMENT RULE.

CONA's Revised Call Report is the operative Call Report for purposes of the Special Assessment Rule. It is undisputed that CONA filed its Original Call Report in February 2023 and its Revised Call Report in June 2023 – well before the November 2, 2023 deadline chosen by the FDIC. (C&A ¶¶ 34, 41.) It is also undisputed that CONA did not file any further amendments to its Call Report for the quarter ended December 31, 2022 – whether in connection with the FDIC's Assessment Reporting Review or otherwise. (C&A ¶ 51.) The Special Assessment Rule therefore requires CONA's special assessment to be calculated based on the "estimated uninsured deposits" as reported in Schedule RC-O of the Revised Call Report. 12 C.F.R. § 327.13(f).

## III. THE FDIC CANNOT DISREGARD CONA'S REVISED CALL REPORT.

The FDIC ignored the text of the Special Assessment Rule and improperly refused to calculate CONA's special assessment based on the Revised Call Report, on the basis that the

FDIC believes it was "inaccurate because it incorrectly excluded" the Intercompany Position. (FDIC Answer ¶ 11; *see also id.* ¶ 5.) The FDIC has instead invoiced CONA for an amount based on the result of its Assessment Reporting Review, which includes the Intercompany Position as an "uninsured deposit," even though no amendment to CONA's Call Report was filed in connection with that process. (C&A ¶¶ 50, 51, 57.) The FDIC's approach is contrary to the plain language of the Special Assessment Rule, which unambiguously requires the FDIC to use the amount of "uninsured deposits" reported by banks in their Call Reports.

In particular, while the Special Assessment Rule contemplates that the FDIC will conduct an Assessment Reporting Review, the results of that review cannot be the basis of a bank's special assessment unless the bank files an amendment to its Call Report to reflect those results. The Special Assessment Rule explicitly requires that a bank itself file a corrective amendment to its Call Report in order for the FDIC's Assessment Reporting Review to have any effect. The special assessment can be based on an amendment to the December 2022 Call Report that is made after the November 2, 2023 deadline, but only "if such amendment arises from, or is confirmed through, the FDIC's Assessment Reporting Review." 12 C.F.R. § 327.13(f)(2); *see also* 88 Fed. Reg. 83329, at 83337, 2023 WL 8235937 (stating that "if, as part of the FDIC's Assessment Reporting Review of an institution's reporting methodology, . . . *the institution files a corrective amendment as a result of the FDIC's review after November 2, 2023*, the FDIC will adjust the special assessment base based on such corrective amendment for such institution") (emphasis added).

Nor does the FDIC have the authority to force CONA to file an amended Call Report. The FDIC's own conduct acknowledges that fact, as it merely "requested" that CONA make an amendment, which CONA declined to do. (C&A ¶¶ 50-51.) The FDIC framed it as a request

with good reason: CONA's primary supervisory agency is the OCC, and so only the OCC can require such an amendment. 12 U.S.C. § 1813(q)(1)(A); 12 C.F.R. § 4.2. (C&A ¶ 16.) CONA files its Call Reports to the OCC on a quarterly basis and in accordance with the Call Report Instructions. 12 U.S.C. §§ 161(a), 1817(a)(3); 12 C.F.R § 304.3. CONA submits its Call Report to the FFIEC's "Central Data Repository" (Ex. A at 9), and the FDIC is permitted "access" to the Call Reports. 12 U.S.C. § 1817(a)(2)(A). Only the OCC, however, "may require" CONA to amend its Call Reports, if the OCC's interpretation of the Call Report Instructions "differs from" CONA's interpretation, or the OCC determines that the Call Reports "contain significant errors." (Ex. A at 8, 10a.) The OCC has not directed CONA to amend the Revised Call Report.

Ultimately, the FDIC must follow the express language of the Special Assessment Rule and calculate CONA's special assessment based on its Revised Call Report.

## CONCLUSION

For these reasons, judgment on the pleadings should be entered in favor of CONA, declaring that CONA's special assessment must be based on the "estimated uninsured deposits" reported in its Revised Call Report and dismissing the FDIC's counterclaim.

Dated: December 22, 2025

Respectfully submitted,

CAPITAL ONE, N.A., *by counsel*,

*/s/ John S. Moran*

John S. Moran (VA Bar #84236)
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
Phone: (202) 828-2817
Fax: (202) 828-3327
*jmoran@mcguirewoods.com*

Bryan A. Fratkin (VA Bar #38933)
Juliet B. Clark (VA Bar #96918)
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
Phone: (804) 775-4352
Fax: (804) 698-2100
*bfratkin@mcguirewoods.com*
*jbclark@mcguirewoods.com*

John Gleeson (admitted Pro Hac Vice)
Helen V. Cantwell (admitted Pro Hac Vice)
Elliot Greenfield (admitted Pro Hac Vice)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
*jgleeson@debevoise.com*
*hcantwell@debevoise.com*
*egreenfield@debevoise.com*

*Counsel for Plaintiff/Counterclaim-Defendant Capital One, N.A.*