**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |
|---|---|
| **Capital One, National Association**<br><br>*Plaintiff/Counterclaim-Defendant*,<br><br>v.<br><br>**Federal Deposit Insurance Corporation**<br><br>*Defendant/Counterclaim-Plaintiff.* | **No. 1:25-cv-1515-RDA-LRV** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF CAPITAL ONE'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS AND IN OPPOSITION TO THE**
**FDIC'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 3

I.    CONA'S SPECIAL ASSESSMENT MUST BE BASED ON ITS REVISED
      CALL REPORT ............................................................................................................. 4

      A.    The FDIC Does Not Dispute the Plain Meaning of the Special Assessment
            Rule ..................................................................................................................... 4

      B.    There Is No Basis for the Court to Ignore the Plain Meaning of the Special
            Assessment Rule ................................................................................................. 5

            1.    The FDIC Has No Authority to Reject or Disregard CONA's Call
                  Reports ...................................................................................................... 6

            2.    The Supposed Purpose of the Special Assessment Rule and the
                  FDIA Does Not Justify Ignoring the Plain Meaning of the Rule ............. 9

II.   THE COURT HAS SUBJECT MATTER JURISDICTION OVER CONA'S
      DECLARATORY JUDGMENT CLAIM ...................................................................... 11

      A.    CONA's Claim Satisfies the Declaratory Judgment Test ................................... 12

            1.    An "Actual Controversy" Exists Between the Parties ............................... 12

            2.    There Is an Independent Basis for Federal Jurisdiction ............................ 12

            3.    Exercising Jurisdiction Would Not Be an "Abuse of Discretion." ........... 13

      B.    CONA's Declaratory Judgment Claim Is Not Preempted by the FDIA ............... 15

      C.    CONA States a Claim Under the Declaratory Judgment Act .............................. 17

CONCLUSION ........................................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**

*B.P.J. ex rel. Jackson v. W. Va. State Bd. of Educ.*,
    98 F.4th 542 (4th Cir. 2024) ...............................................................................10

*Bd. of Governors of Fed. Rsrv. Sys. v. DLG Fin. Corp.*,
    29 F.3d 993 (5th Cir. 1994) ................................................................................15

*BP P.L.C. v. Mayor & City Council of Baltimore*,
    593 U.S. 230 (2021).............................................................................................11

*Brown v. GSA*,
    425 U.S. 820 (1976).............................................................................................16

*Burke v. Nationstar Mortg. LLC*,
    2016 WL 4231705 (E.D. Va. Aug. 9, 2016)........................................................8

*Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195 (2011)...................................................6

*Chippari v. Brookfield Washington, LLC*,
    2024 WL 3166878 (E.D. Va. June 25, 2024) .....................................................14

*Dickenson-Russell Coal Co. v. Sec'y of Lab.*,
    747 F.3d 251 (4th Cir. 2014) ................................................................................6

*EC Term of Years Tr. v. United States*,
    550 U.S. 429 (2007).............................................................................................16

*F.D.I.C. v. Prince George Corp.*,
    58 F.3d 1041 (4th Cir. 1995) ..............................................................................13

*Gilbert v. Residential Funding LLC*,
    678 F.3d 271 (4th Cir. 2012) .........................................................................4, 10

*Guevara v. Zanotti*,
    399 F. Supp. 3d 494 (E.D. Va. 2019) ...................................................................5

*Hinck v. United States*,
    550 U.S. 501 (2007).............................................................................................16

*Hindes v. F.D.I.C.*,
    137 F.3d 148 (3d Cir. 1998).................................................................................14

*Honeywell Int'l Inc. v. OPTO Elecs. Co.*,
    135 F.4th 170 (4th Cir. 2025) ........................................................................12, 13

*In re Brown,*
    932 F.3d 162 (4th Cir. 2019) .......................................................................................10

*Jackson v. Lykes Bros. S.S. Co.,*
    386 U.S. 731 (1967).....................................................................................................10

*Johnson v. S. Pac. Co.,*
    196 U.S. 1 (1904).........................................................................................................10

*Kentuckians for Commonwealth Inc. v. Rivenburgh,*
    317 F.3d 425 (4th Cir. 2003) .......................................................................................10

*Kisor v. Wilkie,*
    588 U.S. 558 (2019)........................................................................................................2

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007).....................................................................................................12

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC,*
    571 U.S. 191 (2014).....................................................................................................13

*Ohio Valley Env't Coal. v. Aracoma Coal Co.,*
    556 F.3d 177 (4th Cir. 2009) .........................................................................................5

*Plumbers & Pipefitters Loc. 625 v. Nitro Constr. Servs., Inc.,*
    27 F.4th 197 (4th Cir. 2022) ..........................................................................................9

*Romero v. Barr,*
    937 F.3d 282 (4th Cir. 2019) ....................................................................................5, 10

*Savage Servs. Corp. v. United States,*
    25 F.4th 925 (11th Cir. 2022) ......................................................................................16

*Sorrells v. United States,*
    287 U.S. 435 (1932).....................................................................................................10

*SVB Fin. Grp. v. F.D.I.C.,*
    2024 WL 3745009 (N.D. Cal. Aug. 8, 2024) ...................................................14, 16, 17

*United States v. Am. Trucking Ass'ns,*
    310 U.S. 534 (1940).....................................................................................................10

*United States v. Blow,*
    2025 WL 1699832 (E.D. Va. June 17, 2025) ...............................................................10

*United States v. Bormes,*
    568 U.S. 6 (2012).........................................................................................................16

*United States v. Brown*,
   333 U.S. 18 (1948) .................................................................................................10

*United States v. Moriello*,
   980 F.3d 924 (4th Cir. 2020) .............................................................................5, 10

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*,
   386 F.3d 581 (4th Cir. 2004) ............................................................................12, 13

*Wells v. Johnson*,
   150 F.4th 289 (4th Cir. 2025) ...............................................................................18

*White v. United Network for Organ Sharing*,
   2025 WL 2656044 (E.D. Va. Sept. 16, 2025).........................................................17

**Statutes**

12 U.S.C. § 161(a) ...........................................................................................................7

12 U.S.C. § 1813(q) .........................................................................................................7

12 U.S.C. § 1817(a) .....................................................................................................7, 11

12 U.S.C. § 1817(g) ................................................................................... *passim*

12 U.S.C. § 1818.............................................................................................................14

12 U.S.C. § 1819(b) ........................................................................................................13

12 U.S.C. § 1821(f)..........................................................................................................17

**Regulations**

12 C.F.R. § 4.2 ................................................................................................................7

12 C.F.R. § 304.3 .............................................................................................................7

12 C.F.R. § 327.5 .............................................................................................................9

12 C.F.R. § 327.13 .........................................................................................................4, 5

**Administrative Materials**

Special Assessment Pursuant to Systemic Risk Determination,
   88 Fed. Reg. 83329, 2023 WL 8235937 (Nov. 29, 2023) .......................................6

Capital One, National Association ("CONA") respectfully submits this memorandum of law (*i*) in reply in support of its Motion for Judgment on the Pleadings as to CONA's declaratory judgment claim and the FDIC's counterclaim (Dkt. Nos. 25-26) and (*ii*) in opposition to the FDIC's Cross-Motion for Judgment on the Pleadings as to CONA's declaratory judgment claim (Dkt. Nos. 29-31).[1]

## **PRELIMINARY STATEMENT**

The FDIC's memorandum highlights why the Court should enter judgment on the pleadings in favor of CONA: the FDIC does not dispute that, under the plain language of its own Special Assessment Rule, CONA's special assessment must be based on the "estimated uninsured deposits" reported in its Revised Call Report, and it identifies no disputed facts that might preclude judgment on the pleadings under Rule 12(c). The FDIC now contends that its own Special Assessment Rule was drafted "inartfully," but even if that were true, it identifies no valid reason why the Court should ignore the rule's plain language. The FDIC's cross-motion, which asserts that the Court lacks jurisdiction over CONA's declaratory judgment claim, is also contrary to established law and should be denied.

*First*, with respect to CONA's motion for judgment on the pleadings – which applies to both its declaratory judgment claim and the FDIC's counterclaim – the FDIC does not dispute that the Special Assessment Rule unambiguously states that the special assessment must be based on the bank's estimate of uninsured deposits "as reported in" its operative December 2022 Call Report. The FDIC also does not dispute that CONA amended its December 2022 Call

---

[1] Capitalized terms not defined herein have the same meaning as in CONA's Memorandum of Law in Support of its Motion for Judgment on the Pleadings (Dkt. No. 26, "Mem."). The FDIC's "Memorandum in Opposition to Plaintiff's Motion for Judgment on the Pleadings and in Support of FDIC's Cross-Motion for Judgment on the Pleadings as to Plaintiff's Complaint" (Dkt. No. 30) is referred to as the "Opposition" or "Opp'n."

Report in June 2023, and that the Revised Call Report did not include the Intercompany Position

as an uninsured deposit.  That is the end of the analysis:  because that language is unambiguous,

"a court has no business deferring to any other reading, no matter how much the agency insists it

would make more sense." *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019).

Unable to dispute the Special Assessment Rule's plain meaning, the FDIC asks the Court

to disregard the unambiguous language of that rule based on the incorrect assertion that the

FDIA allows the FDIC to reject a Call Report with which it disagrees.  The FDIC also suggests

that the Special Assessment Rule, as written, is somehow inconsistent with the broader purpose

of the FDIA.  Those assertions lack merit and are inapposite where, as here, the regulation is

unambiguous.

*Second*, the FDIC's assertion in its cross-motion that the Court has subject matter

jurisdiction over its counterclaim, but lacks jurisdiction over CONA's mirror-image declaratory

judgment claim, is contrary to common sense and Supreme Court and Fourth Circuit authority.

As the Supreme Court has made clear, jurisdiction over a declaratory judgment claim turns on

the nature of the threatened claim – here, the FDIC's claim under 12 U.S.C. § 1817(g)(1).

Because the Court has jurisdiction over that claim, it necessarily has jurisdiction over CONA's

declaratory judgment claim.  Nor does the FDIC offer any basis to conclude that exercising

jurisdiction would be an abuse of discretion.  To the contrary, declaratory relief would resolve

the legal issue in dispute and terminate the controversy, whereas declining jurisdiction would not

narrow the scope of the litigation because the FDIC's counterclaim involves the same dispute.

The FDIC's fallback argument that declaratory judgment claims are preempted by 12 U.S.C.

§ 1817(g)(2) is equally meritless:  that subsection merely provides a statute of limitations for one

potential claim by a bank; it comes nowhere close to the type of "precisely drawn, detailed statute" that might preempt other claims.

The Court should enter judgment on the pleadings, declaring that CONA's special assessment must be based on the "estimated uninsured deposits" reported in the Revised Call Report and dismissing the FDIC's counterclaim.

## **ARGUMENT**

The FDIC does not deny that the Court may enter judgment on the pleadings with respect to the proper interpretation and application of the Special Assessment Rule, and it does not identify any disputed facts that require discovery on that issue. Although the FDIC discusses at length its disagreement with CONA's argument that the Intercompany Position is not a "deposit," including numerous disputed allegations that are not appropriately considered in a Rule 12(c) motion, the parties' disagreement on that issue has no bearing on the motions before the Court.

The FDIC's repeated references to "fraudulent" Call Reports are both new and inappropriate. During extended discussions with the FDIC before this action was filed, CONA argued that the Intercompany Position, which indisputably posed zero of the risk to the FDIC that is posed by uninsured deposits of bank customers, is not a "deposit" for purposes of the FDIA. Until the Opposition, the FDIC never suggested that CONA's argument reflected anything other than its good faith belief in the proper characterization of the Intercompany Position. The Opposition's desperate allegations of fraud amount to misdirection – an effort to deflect attention away from CONA's argument that the FDIC must comply with the plain language of its own Special Assessment Rule.

3

**I.      CONA'S SPECIAL ASSESSMENT MUST BE BASED ON ITS REVISED CALL REPORT.**

The FDIC's Opposition confirms that CONA is entitled to judgment on the pleadings (as to both its declaratory judgment claim and the FDIC's counterclaim) because the FDIC does not – and cannot – dispute the plain and unambiguous meaning of the Special Assessment Rule that it wrote.  That rule explicitly *requires* that CONA's special assessment be based on the "estimated uninsured deposits" as reported in the Revised Call Report.

The FDIC offers no valid basis for the Court to ignore the plain meaning of the Special Assessment Rule.  Nor could it:  "The Supreme Court has repeatedly emphasized the importance of the plain meaning rule, stating that if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written." *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 276 (4th Cir. 2012).

**A.      The FDIC Does Not Dispute the Plain Meaning of the Special Assessment Rule.**

The Special Assessment Rule unambiguously states that a bank's special assessment must be based on the amount of "uninsured deposits" reported in the bank's operative December 2022 Call Report.  (Mem. 9-11.)  The amount of CONA's special assessment is the product of a "special assessment rate" and a "special assessment base," with the latter defined as the bank's "uninsured deposits," less $5 billion.  (Mem. 9 (citing 12 C.F.R. §§ 327.13(c), 327.13(i)).)  CONA's "uninsured deposits," for purposes of the special assessment, is the "estimated uninsured deposits *as reported in*" Schedule RC-O of the Call Report "for the quarter ended December 31, 2022, *reported as of . . .* November 2, 2023."  12 C.F.R. § 327.13(f) (emphasis

4

added).[2]  The FDIC does not dispute that CONA's Revised Call Report is the operative Call Report for purposes of the Special Assessment Rule.  (Mem. 11.)  The Revised Call Report was filed in June 2023 – months before the November 2, 2023 deadline – and CONA did not file any further amendments.  (Mem. 11.)

The plain meaning of the Special Assessment Rule therefore leaves no doubt that CONA's uninsured deposits "as reported in" Schedule RC-O of the Revised Call Report must be used to determine CONA's special assessment.  12 C.F.R. § 327.13(f).  The FDIC does not claim that the language is ambiguous.  The Court need go no further:  Where "the regulation itself is unambiguous," then "its plain language controls."  *Romero v. Barr*, 937 F.3d 282, 291 (4th Cir. 2019) (quoting *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 193 (4th Cir. 2009)); *see also Guevara v. Zanotti*, 399 F. Supp. 3d 494, 500 (E.D. Va. 2019) (Where the text of a regulation is unambiguous, the inquiry "ends there.").

### B.    There Is No Basis for the Court to Ignore the Plain Meaning of the Special Assessment Rule.

Given the plain meaning of the Special Assessment Rule, the FDIC spends little time addressing it.  Instead, the FDIC attempts to avoid the actual text of that rule by dismissing it as "inartfully" drafted, and it asks the Court to ignore the rule's plain meaning by citing to various irrelevant provisions of the FDIA or the supposed purpose of that statute.  Those arguments are fundamentally flawed.  Faced with an unambiguous regulation, there is no need for the Court to attempt to discern "the intent of Congress or the Agency" or conduct an "analysis of the underlying statute's structure and purpose."  *United States v. Moriello*, 980 F.3d 924, 934 (4th Cir. 2020) (internal quotations omitted).

---

[2]    Because CONA did not amend its Call Report as part of the FDIC's Assessment Reporting Review, the portion of Section 327.13(f) pertaining to that process is not relevant here.

5

As a threshold matter, the FDIC's suggestions that the Special Assessment Rule was "inartfully" drafted and that CONA seeks to take advantage of a "loophole" are not persuasive. (Opp'n 2, 19.)  The FDIC itself drafted the Special Assessment Rule, and the rule was finalized only after more than eight months of scrutiny, including a months-long public notice and comment period.[3]  (Mem. 5.)  The FDIC then promulgated the Special Assessment Rule, and it must be applied as it is actually written – not as the FDIC might now wish it could go back in time and rewrite it.  *See Dickenson-Russell Coal Co. v. Sec'y of Lab.*, 747 F.3d 251, 256-57 (4th Cir. 2014) ("When the regulation in question is unambiguous, adopting the agency's contrary interpretation would permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation.") (quoting *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 211 (2011)) (alternations omitted).

In any event, neither the text nor the purpose of the FDIA contradicts the plain language of the Special Assessment Rule or otherwise provides any reason to ignore that plain language.

### 1.    The FDIC Has No Authority to Reject or Disregard CONA's Call Reports.

Although the FDIC concedes that the Special Assessment Rule requires a bank's special assessment to be based on the "uninsured deposits" as reported in that bank's Call Reports, it nonetheless asserts – incorrectly – that it has the authority to reject and disregard those Call

---

[3]    The suggestion that the Special Assessment Rule was "inartfully" drafted also runs counter to the FDIC's own detailed description of the rule, which states that a bank's special assessment is based on amounts *as reported in* the bank's Call Report, and any disagreement the FDIC might have with those amounts would impact the special assessment *only* if the bank files an amended Call Report.  (Mem. 10-11, 12 (citing Special Assessment Pursuant to Systemic Risk Determination, 88 Fed. Reg. 83329, at 83332 n.15, 83337, 2023 WL 8235937 (Nov. 29, 2023)).)

Reports. (Opp'n 19-25.) That assertion not only directly contradicts the Special Assessment Rule but also is unsupported by any provision of the FDIA.

There is no dispute that the OCC – not the FDIC – is CONA's primary supervisory authority. CONA files its Call Reports with the OCC, and only the OCC may reject a Call Report filed by CONA and require it to file an amended Call Report if the OCC determines that the Call Report is erroneous or contrary to the Call Report Instructions. (Mem. 4-5, 12-13 (citing 12 U.S.C. §§ 161(a), 1813(q), 1817(a); 12 C.F.R. §§ 4.2, 304.3; Call Report Instructions).) The FDIC is permitted "access" to CONA's Call Reports, which are submitted to the FFIEC's "Central Data Repository." (Mem. 13; Opp'n 20.)

The FDIC's sole source for its purported authority to "reject" a Call Report is Section 1817(a)(2)(A), but that provision merely governs the sharing of reports among federal banking agencies and other supervisory authorities. It states that the FDIC shall have "access" to Call Reports that are filed with the OCC or other federal banking agencies, as well as any "revisions" to Call Reports filed with those agencies. 12 U.S.C. § 1817(a)(2)(A). It also states that the FDIC "may accept" any report made to any supervisory authority, and "may furnish" to any such supervisory authority or other federal banking agency, any Call Reports filed with the FDIC. *Id*. Seizing on the "may accept" phrase, the FDIC asserts a power to *reject* a Call Report filed with a different federal agency. (Opp'n 21-22, 24.) That makes no sense, as Section 1817(a)(2) deals with information sharing among federal agencies and other supervisory authorities – *accepting* and *furnishing* reports – and says nothing about any authority to reject a Call Report or to require a bank to file an amended Call Report.

Nor do any of the other cited provisions of Section 1817 relate to the rejection or amendment of a Call Report. (Opp'n 19-21.) For example, the FDIC's authority under Section

7

1817(a)(2)(B) to require banks to file other reports *in addition to* Call Reports does not mean it can reject or require amendment of a Call Report.  (Opp'n 20-21, 27, 28.)

The FDIC's comparison of Call Reports to income tax returns undermines, rather than supports, its position.  (Opp'n 21.)  Tax returns are filed with the IRS, and the IRS has the authority to reject or require amendment of a return.  Likewise, CONA files its Call Report with the OCC, and the OCC has the authority to require that CONA file an amended Call Report.  But the fact that the FDIC is permitted *access* to CONA's Call Report does not somehow grant it the authority delegated to the OCC.  If anything, it confirms that the FDIC lacks such authority.

Of course, the FDIC may *request* that a bank not under its supervision make a change to its Call Report.  That is, in fact, what the FDIC did in this case:  after conducting its Assessment Reporting Review, the FDIC requested that CONA amend its Revised Call Report.  (C&A ¶ 50; Mem. 7.)  It did not purport to "reject" CONA's Call Report or force CONA to file an amended Call Report, and CONA did not amend its Revised Call Report.  (Mem. 11.)  In other circumstances, for a variety of reasons, a bank might agree to make any appropriate amendments, as CONA did in one unrelated instance in 2018.[4]  (Opp'n 28; Dkt. No. 31.)  That is entirely different, however, from the FDIC having the power to *require* an amendment to a Call Report.  Similarly, the FDIC could ask the OCC to direct CONA to amend its Call Report.  The FDIC does not allege whether or not it did so, but it is undisputed that the OCC has not directed CONA to amend the Revised Call Report.  Thus, the FDIC's inability to require amendments hardly renders the Assessment Reporting Review "pointless," as the FDIC asserts, as there

---

[4]    The letters submitted by the FDIC are not properly considered in connection with the parties' Rule 12(c) motions because they are "outside the pleadings" and not "integral to the Complaint."  *Burke v. Nationstar Mortg. LLC*, 2016 WL 4231705, at *5 n.7, 16 (E.D. Va. Aug. 9, 2016).

remains clear value in the FDIC identifying potential errors and raising them with the banks themselves or with other regulators.  (Opp'n 23.)

It bears emphasis that the Special Assessment Rule's required use of amounts "as reported in" a bank's Call Report governs only this *special assessment* and has no impact on *regular assessments*.  Contrary to the FDIC's assertion, the language of 12 C.F.R. § 327.5, which governs regular assessments, is meaningfully different from the language of the Special Assessment Rule.  (Opp'n 23-24; Mem. 11.)  Whereas the Special Assessment Rule refers to amounts "as reported in" the Call Report, Section 327.5(a)(1) does not include that language.[5] Accordingly, for regular assessments, the FDIC is not required to rely on amounts reported by banks in their Call Reports, and its inability to require amendments to Call Reports is irrelevant. By specifically tying the Special Assessment calculation to the amount reported by the bank, the FDIC chose a different approach in the Special Assessment Rule.  The FDIC's second thoughts about its own drafting decisions are no reason not to apply its rule as written.

### 2.    The Supposed Purpose of the Special Assessment Rule and the FDIA Does Not Justify Ignoring the Plain Meaning of the Rule.

The FDIC's reliance on the supposed purpose of the Special Assessment Rule or the FDIA does not justify departing from the unambiguous requirements of the rule.  As discussed above, the FDIC's assertions about purpose or intent cannot, as a matter of law, trump the plain meaning of the Special Assessment Rule.  *See Plumbers & Pipefitters Loc. 625 v. Nitro Constr. Servs., Inc.*, 27 F.4th 197, 202 (4th Cir. 2022) (courts "are not entitled to ignore the plain language of the statute in order to effectuate what [the appellants] claim to be the overarching

---

[5]    Section 327.5(a)(1) states that "average consolidated total assets" is *defined in* the Call Report, but it does not require the FDIC to rely on the amount of "average consolidated total assets" as *reported in* a bank's Call Report.  12 C.F.R. § 327.5(a)(1).  Notably, the phrase "as reported in" is not in quotation marks in the FDIC's brief.  (Opp'n 23-24.)

purpose of Congress"); *Moriello*, 980 F.3d at 934; *Romero*, 937 F.3d at 291; *Gilbert*, 678 F.3d at 276. The cases the FDIC cites, most of which were decided many decades ago and do not reflect current doctrine on interpretation, have no application here. (Opp'n 25-26, 29-30.) In none of them did a court depart from the plain and unambiguous terms of a statute or regulation in favor of some perceived purpose. Instead, in each of the cases cited by the FDIC, the court either rejected interpretations that departed from unambiguous text[6] or considered legislative intent to resolve an ambiguity.[7]

Moreover, to the extent the Court considers the "objectives underlying" the FDIA and the Special Assessment Rule, there is no inconsistency between what the FDIC identifies as their purpose – the replenishment of the Deposit Insurance Fund ("DIF") following the invocation of a systemic risk exception – and the relief CONA seeks here. (Opp'n 29.) As the FDIC states, in the context of a systemic risk exception, the FDIA authorizes the FDIC to establish rules for a special assessment. (Opp'n 26.) The FDIC did so here, exercising its discretion to craft a rule and adopting the Special Assessment Rule. (Opp'n 26.) It must now apply the Special

---

[6]    *See B.P.J. ex rel. Jackson v. W. Va. State Bd. of Educ.*, 98 F.4th 542, 564 (4th Cir. 2024) (rejecting reliance on "historical expectations" to depart from statute's plain meaning); *In re Brown*, 932 F.3d 162, 170-71 (4th Cir. 2019) (rejecting interpretation of statute that departed from plain meaning because the proffered reading created a "conflict with other statutes" and ignored "Congress' policy choices behind those statutes"). (Opp'n 26, 30.)

[7]    *See Johnson v. S. Pac. Co.*, 196 U.S. 1, 14-17 (1904) (ambiguity concerning "couplers coupling automatically by impact"); *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 545 (1940) (ambiguity concerning "employee"); *Sorrells v. United States*, 287 U.S. 435, 442-43, 448 (1932) (ambiguity concerning availability of entrapment defense); *Kentuckians for Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425, 443-44, 447 (4th Cir. 2003) (ambiguity concerning "fill material"); *United States v. Blow*, 2025 WL 1699832, at *11-12 (E.D. Va. June 17, 2025) (ambiguity concerning whether statute required specific mental state); *Jackson v. Lykes Bros. S.S. Co.*, 386 U.S. 731, 735 (1967) (ambiguity over which longshoremen had standing to sue); *United States v. Brown*, 333 U.S. 18, 24, 26 (1948) (ambiguity concerning "the sentence for which said person was originally confined"). (Opp'n 25-26, 29-30.)

10

Assessment Rule as written. Doing so does not "prevent the FDIC from carrying out the statutory command to replenish the DIF" (Opp'n 29); it requires only that the FDIC abide by the rule it drafted and adopted to do so.

The FDIC's purported concern that enforcement of the Special Assessment Rule as written will lead to fraud is unfounded. *First*, the Special Assessment Rule is a one-off regulation applicable *only* to the systemic risk determination following the closures of Silicon Valley Bank and Signature Bank. It has *no* impact on the regular assessment process or other potential special assessments, and the November 3, 2023 deadline to submit an amended Call Report for purposes of the Special Assessment Rule has long since expired. *Second*, there already exist strong disincentives to the submission of a fraudulent Call Report, as each Call Report is accompanied by certifications by directors and officers of the bank that the report is "true and correct to the best of [their] knowledge and belief," and false reports may subject the bank to substantial penalties. 12 U.S.C. § 1817(a)(1), (3). *Third*, the bank's primary supervisory authority can require the filing of an amended Call Report it believes is inaccurate or take other appropriate action. None of the FDIC's unfounded concerns provide any basis to avoid enforcing the Special Assessment Rule as written. *See BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230 (2021) (rejecting argument that the Court's interpretation would "invite gamesmanship" and emphasizing that the Court's "task is to discern and apply the law's plain meaning as faithfully as we can").

## II.    THE COURT HAS SUBJECT MATTER JURISDICTION OVER CONA'S DECLARATORY JUDGMENT CLAIM.

The FDIC's cross-motion – premised on the incorrect belief that the Court has subject matter jurisdiction over the FDIC's counterclaim but lacks jurisdiction over CONA's declaratory judgment claim – should be denied. The Court has subject matter jurisdiction over CONA's

11

claim because (*i*) an "actual controversy" exists between the parties; (*ii*) there is an independent basis for federal question jurisdiction; and (*iii*) the exercise of jurisdiction would not be an "abuse of discretion." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004). Nor is CONA's declaratory judgment claim preempted by Section 1817(g)(2), which provides only a statute of limitations for one potential claim by a bank and is not the type of "precisely drawn, detailed statute" that might preempt more general claims.

### A. CONA's Claim Satisfies the Declaratory Judgment Test.

The Court has subject matter jurisdiction over CONA's declaratory judgment claim because all three prongs of the "declaratory judgment test" are satisfied. *Id.*

### 1. An "Actual Controversy" Exists Between the Parties.

The FDIC does not dispute the existence of an "actual controversy" between the parties regarding the amount of CONA's special assessment. Nor could it: when CONA filed suit in September 2025, the FDIC had a ripe claim against CONA under Section 1817(g)(1), which it has now asserted as a counterclaim in this action. (CONA Compl. ¶ 15; FDIC Countercl. ¶¶ 51-59.) The parties' dispute over the special assessment is "definite and concrete" – as opposed to speculative or hypothetical – "touching the legal relations of parties having adverse legal interests." *Honeywell Int'l Inc. v. OPTO Elecs. Co.*, 135 F.4th 170, 181 n.8 (4th Cir. 2025) (internal quotations omitted). The Supreme Court has repeatedly held that "where threatened action by *government* is concerned," courts do not "require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) (emphasis in original) (citing cases).

### 2. There Is an Independent Basis for Federal Jurisdiction.

There is an independent basis for federal jurisdiction over CONA's declaratory judgment claim because the FDIC's hypothetical threatened claim – now materialized – arises under a

12

federal statute, Section 1817(g)(1).  *See* 12 U.S.C. § 1817(g)(1) (authorizing the FDIC to file an action to recover any "unpaid assessment lawfully payable" by a bank).  For declaratory judgment claims, jurisdiction is determined by "the threatened action in the absence of the declaratory judgment suit."  *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014).  In other words, the Court has subject matter jurisdiction over CONA's declaratory judgment claim because the "hypothetical threatened action" that could have been brought by "the declaratory judgment defendant" – the FDIC – arises under federal law.  *Honeywell Int'l Inc.*, 135 F.4th at 178 (holding that the court had jurisdiction over declaratory judgment claim where hypothetical threatened action arose under federal patent-infringement statute).[8]

### 3.    Exercising Jurisdiction Would Not Be an "Abuse of Discretion."

The FDIC does not – and cannot – demonstrate that the exercise of jurisdiction over CONA's declaratory judgment claim would be an "abuse of discretion."  *Volvo Constr.*, 386 F.3d at 592.  To the contrary, the Fourth Circuit has held that courts are "obliged to rule on the merits" where, as here, "declaratory relief will serve a useful purpose in clarifying and settling the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Id.* at 594.  CONA's requested declaration would clarify, settle, and terminate the parties' intractable dispute over the amount of CONA's special assessment.  As the FDIC admits, its jurisdictional objection has no impact on the scope of this litigation, as its counterclaim requires the Court to resolve the same dispute.  (Opp'n 1, 13 n.6.)

---

[8]  To the extent the FDIC contends it could also assert common law claims (Opp'n 15-16), those hypothetical claims would also provide an independent basis for subject matter jurisdiction for CONA's declaratory judgment claim because "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."  12 U.S.C. § 1819(b)(2)(A); *see also F.D.I.C. v. Prince George Corp.*, 58 F.3d 1041, 1045 (4th Cir. 1995) ("Suits to which FDIC is a party are deemed to arise under federal law.").

Nor does it impact CONA's Rule 12(c) motion, which applies equally to the FDIC's counterclaim.  The Court will need to resolve these issues no matter what.

The FDIC's purported concerns about permitting a declaratory judgment in these circumstances have no basis in the law and do not weigh against the exercise of jurisdiction.  (Opp'n 17-18.)  *First*, there is no reason to conclude that properly exercising jurisdiction in this case would have *any* impact on future litigation, much less cause a flood of litigation by the "4,300 FDIC-insured banks in the United States" (Opp'n 17), as banks already have the ability to bring declaratory judgment claims against the FDIC in appropriate circumstances.  *See SVB Fin. Grp. v. F.D.I.C.*, 2024 WL 3745009, at *8 (N.D. Cal. Aug. 8, 2024) (rejecting similar argument by the FDIC that allowing plaintiff's claims would "open the floodgates of litigation" and allow "every depositor of a failed bank" to bring a claim against the FDIC).

*Second*, a declaratory judgment action against the FDIC does not "nullify the statute of limitations in 12 U.S.C. § 1817(g)(2)."  (Opp'n 17.)  Declaratory judgment actions "are subject to the same limitation period as the underlying object of the litigation."  *Chippari v. Brookfield Washington, LLC*, 2024 WL 3166878, at *7 (E.D. Va. June 25, 2024).  Here, CONA's declaratory judgment claim is governed by the same three-year limitations period as the FDIC's claim under Section 1817(g)(1) and was brought well within it.  *See* 12 U.S.C. § 1817(g)(2)(B).

*Third*, CONA's declaratory judgment claim does not affect any potential administrative enforcement proceedings under 12 U.S.C. § 1818, which governs the termination of a bank's deposit insurance.  (Opp'n 18.)  CONA's claim is limited to clarifying the amount of its special assessment, and, unlike in the cases the FDIC cites, it does not seek to enjoin or otherwise affect a Section 1818 notice or order.  *See Hindes v. F.D.I.C.*, 137 F.3d 148, 154, 163-64 (3d Cir. 1998) (Section 1818(i) barred challenge to notification by the FDIC of intent to cancel bank's

14

insurance); *Bd. of Governors of Fed. Rsrv. Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 999 (5th Cir. 1994) (Section 1818(i) barred court from enjoining the commencement of Federal Reserve's administrative enforcement proceedings).

### B.    CONA's Declaratory Judgment Claim Is Not Preempted by the FDIA.

The FDIC's novel assertion that Section 1817(g)(2) preempts declaratory judgment claims (Opp'n 13-17) has no support in the law.  Section 1817(g)(2) does not – as the FDIC claims – provide an "express remedy" for banks that precludes a declaratory judgment claim. Section 1817(g)(2) does not provide *any* remedies at all; it merely sets forth the limitations period for certain claims.  No court has ever held that Section 1817(g)(2) precludes declaratory judgment claims or other actions.  That is no surprise, as that provision bears no resemblance to the types of detailed statutory schemes that authorize specific judicial relief and have been held to preempt more general remedies.

The scope of Section 1817(g) is clear:  Section 1817(g)(1) authorizes the FDIC to recover from a bank "the amount of any unpaid assessment lawfully payable" (precisely the claim that the FDIC asserts in this action), and Section 1817(g)(2) – appropriately titled "Statute of limitations" – then sets forth the time periods in which certain actions must be brought. 12 U.S.C. § 1817(g).  In particular, as to banks, any action for a refund of "the overpaid amount of any assessment" must be brought within three years.  12 U.S.C. § 1817(g)(2)(A).  By its plain language, Section 1817(g)(2) does not, as the FDIC contends, "provide" or "authorize" any actions or remedies.  (Opp'n 11-15.)  Nor does it require banks to overpay and then seek a refund.  The FDIC cites no authority to the contrary.

As the FDIC acknowledges, preemption requires a "precisely drawn, detailed statute" that governs the claim at issue, and courts look to whether the statute "provides a forum for adjudication, a limited class of potential plaintiffs, a statute of limitations, a standard of review,

15

and authorization for judicial relief." *Hinck v. United States*, 550 U.S. 501, 506 (2007). (Opp'n 14-15.)  Aside from providing a statute of limitations for one potential claim by an insured bank, Section 1817(g)(2) does none of those things.  It does not authorize judicial relief, much less provide a forum for adjudication or set forth a standard of review.

Section 1817(g)(2) thus stands in stark contrast to statutes that have been found to preempt other remedies.  *See, e.g., Hinck*, 550 U.S. at 506-07 (Internal Revenue Code authorized abatement of interest claims, by taxpayers, exclusively in the Tax Court, within prescribed time period, under an abuse of discretion standard); *United States v. Bormes*, 568 U.S. 6, 14 (2012) (Fair Credit Reporting Act created a "carefully circumscribed, time-limited, plaintiff-specific cause of action," and designated the appropriate forum, specified the available damages, and set out the culpability required of a defendant); *EC Term of Years Tr. v. United States*, 550 U.S. 429, 430-31 (2007) (Federal Tax Lien Act authorized challenges to tax levies, by property owners, in district courts, within a 9-month limitations period); *Brown v. GSA*, 425 U.S. 820, 829-34 (1976) (Section 717 of the Civil Rights Act authorized cause of action for federal employment discrimination, established "administrative and judicial enforcement mechanisms," set time limitations, and governed other issues including "venue, the appointment of attorneys, attorneys' fees, and the scope of relief"); *Savage Servs. Corp. v. United States*, 25 F.4th 925, 939 (11th Cir. 2022) (Oil Pollution Act provided a "veritable super-structure of oil-cleanup rights, duties, and obligations," governing liability, defenses, contribution claims, jurisdiction, venue, and time limitations).

The FDIC's preemption argument fails for the additional reason that this is *not* an action for a refund of overpaid amounts and therefore is not even governed by the statute of limitations provided in Section 1817(g)(2)(A).  *See SVB Fin. Grp.*, 2024 WL 3745009, at *6-*8 (noting

16

parties' agreement that 12 U.S.C. § 1821(f) preempted actions for insurance coverage but rejecting, as "contrary to the language of the statute," the FDIC's argument that plaintiff's claims fell within the scope of that preemption).[9]  Here, as the FDIC acknowledges, CONA has not paid the excessive amount invoiced by the FDIC and does not seek a refund (Opp'n 12); instead, it deposited security in the amount of the invoice pursuant to an agreement with the FDIC while the parties resolve their dispute in this action.  (C&A ¶ 68.)  And, contrary to the FDIC's unsupported assertion, nothing in the FDIA "require[s] banks to prepay the disputed assessment amount as a precondition to initiating an action against the FDIC."  (Opp'n 12.)

The other portions of Section 1817 that the FDIC cites have no bearing on CONA's declaratory judgment claim because they pertain to the rights and remedies of the FDIC. (Opp'n 15-16.)  None of them relate to, much less limit, a bank's ability to challenge the calculation of its special assessment.

### C.     CONA States a Claim Under the Declaratory Judgment Act.

The FDIC's half-hearted argument that CONA fails to state a claim under Rule 12(b)(6) should be rejected because CONA adequately pleads a justiciable controversy between the parties and seeks a declaration as to the parties' rights and obligations.  (Opp'n 18-19.) *See White v. United Network for Organ Sharing*, 2025 WL 2656044, at *15 (E.D. Va. Sept. 16, 2025) ("[T]he Court finds that there exists an actual controversy between the parties; therefore,

---

[9]     In contrast to Section 1817(g)(2), the statutory provision at issue in *SVB Financial Group* sets forth in detail the requirements for payment of insured deposits, creates a process for "any claim for insurance coverage," states that the FDIC's determinations regarding claims are "final determinations," provides that such determinations are "reviewable in accordance with chapter 7 of Title 5 by the United States district court for the Federal judicial district where the principal place of business of the depository institution is located," and sets a 60-day limitations period for filing a request for review.  12 U.S.C. § 1821(f)(1)-(5); *see also SVB Fin. Grp.*, 2024 WL 3745009, at *6-8 (discussing the provisions of Section 1821(f)).

the declaratory judgment claim is adequately alleged.").  Specifically, CONA alleges a dispute regarding the amount of its special assessment, as to which the FDIC may assert (and has asserted) a claim under Section 1817(g)(1).  CONA brings a "defensive suit" as a "party who would be the defendant in a hypothetical future case," which is the "paradigm case for a declaratory judgment action."  *See Wells v. Johnson*, 150 F.4th 289, 302 (4th Cir. 2025).  The FDIC's cited authority merely states that a declaratory judgment claim requires an independent basis of subject matter jurisdiction.  (Opp'n 18-19.)  As discussed above in Section II.A.2., the FDIC's threatened claim under Section 1817(g)(1) provides that independent basis of subject matter jurisdiction.

## CONCLUSION

For these reasons and those set forth in CONA's opening brief, (*i*) judgment on the pleadings should be entered in favor of CONA, declaring that CONA's special assessment must be based on the "estimated uninsured deposits" reported in its Revised Call Report and dismissing the FDIC's counterclaim, and (*ii*) the FDIC's cross-motion for judgment on the pleading should be denied.

Dated: February 25, 2026

Respectfully submitted,

CAPITAL ONE, N.A., *by counsel*,

*/s/ John S. Moran*
John S. Moran (VA Bar #84236)
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
Phone: (202) 828-2817
Fax: (202) 828-3327
*jmoran@mcguirewoods.com*

Bryan A. Fratkin (VA Bar #38933)
Juliet B. Clark (VA Bar #96918)
MCGUIREWOODS LLP
800 East Canal Street

18

Richmond, VA 23219
Phone: (804) 775-4352
Fax: (804) 698-2100
*bfratkin@mcguirewoods.com*
*jbclark@mcguirewoods.com*

John Gleeson (admitted Pro Hac Vice)
Helen V. Cantwell (admitted Pro Hac Vice)
Elliot Greenfield (admitted Pro Hac Vice)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
*jgleeson@debevoise.com*
*hcantwell@debevoise.com*
*egreenfield@debevoise.com*

*Counsel for Plaintiff/Counterclaim-Defendant*
*Capital One, N.A.*

## CERTIFICATE OF SERVICE

I certify that on February 25, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ John S. Moran*
John S. Moran

*Counsel for Plaintiff/Counterclaim-defendant Capital One, N.A.*